UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JHAMIR DAVIS, <br><br> Plaintiff, <br><br> v. <br><br> JOLIET TOWNSHIP HIGH SCHOOL DISTRICT 204 BOARD OF EDUCATION, AND BREAH POINTER, <br><br> Defendants. | No. 24 CV 1701 <br><br> Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Jhamir Davis alleges that, while in high school, he was sexually abused, harassed, and groomed by Breah Pointer, a social worker employed by the Joliet Township High School District 204 Board of Education ("Board"). Davis filed this lawsuit against the Board and Pointer alleging violations under 42 U.S.C. § 1983, Title IX of the Education Amendments, Section 504 of the Rehabilitation Act, Title II of the Americans with Disabilities Act, and various state-law tort claims. The Board moves to dismiss all claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6) and to find that punitive damages are not available against the Board. R. 40. For the following reasons, that motion is granted in part and denied in part.

**Legal Standard**

A Rule 12(b)(6) motion challenges the "legal sufficiency of a complaint." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020) (citation omitted). A complaint must provide "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). While

"detailed factual allegations" are not required, the complaint must provide the defendant with "fair notice" of the claim and "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). "Facial plausibility exists when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 523 (7th Cir. 2023) (citations omitted). In deciding a motion to dismiss, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the plaintiff. *See Hernandez v. Ill. Inst. of Tech.*, 63 F.4th 661, 666 (7th Cir. 2023).

## Background

Davis was a special education student at Joliet Township High School ("JTHS"), graduating in 2023. R. 32 ¶ 5. Because of his Attention Deficit/Hyperactive Disorder, Davis had an Individualized Education Plan ("IEP") throughout his high school career that required clinical intervention as needed and weekly group counseling. *Id.* ¶¶ 5, 6. Davis was assigned to work with Pointer, a social worker at JTHS, during his sophomore year in light of his IEP and certain substance abuse issues. *Id.* ¶¶ 7, 9. At some point that year, Pointer began flirting with Davis in school hallways and during her sessions with Davis. *Id.* ¶ 10. Notwithstanding the IEP calling for group counseling, Pointer would call Davis to her office for individual counseling on a daily basis, sometimes multiple times per day, causing him to miss

2

classes and lunch. *Id.* ¶¶ 10, 33. Many of the visits would last 45 minutes to an hour, while typical counseling visits for other students lasted 10 or 15 minutes. *Id.* ¶ 33. During the visits, Pointer would lock her office door, draw the blinds, sit on Davis's lap and describe in detail her sexual fantasies and desires for him. *Id.* ¶¶ 10, 34. Pointer's office was located next to the school administrators' offices, and occasionally, administrators would greet Davis as he was entering and exiting Pointer's office. *Id.* ¶ 35.

Beginning as early as November 2021, the inappropriate behavior escalated to text messages, phone calls, and FaceTime calls, at all hours, wherein Pointer shared her feelings and sexual desires for Davis, described how she pleasured herself while thinking about Davis, and removed her clothing and touched herself while Davis watched. *Id.* ¶¶ 11–16. In addition to these sexually-charged communications, Pointer groomed and manipulated Davis, acting coy and playing "hard to get," giving him the impression that they were in a romantic relationship, chiding him for speaking to or expressing interest in other female students, and then luring him in with sexual fantasies. *Id.* ¶¶ 18–23.

The abuse intensified between April 27, 2023 and May 20, 2023, during which time Davis and Pointer exchanged over 350 text messages, Pointer offered to pick Davis up from his home and take him back to her home 25 miles away, and gave him money to purchase marijuana and get a tattoo. *Id.* ¶¶ 24–27. The abuse occurred nearly every day during and after school, and included not only texting and calls, but also intimate touching, kissing, masturbating, sexting, and phone sex. *Id.* ¶ 28.

3

Some of Davis's teachers began complaining to school administrators about him missing classes due to the frequent and extended visits to Pointer's office, and students teased Davis in front of school staff and administrators that he and Pointer were having an "affair" and having "sex in her office." *Id.* ¶¶ 36–38. Meanwhile, Pointer assured Davis that their relationship was "okay" and "special," that she "loved" him and "they would be together forever," and that they would "both get in trouble if he told anyone." *Id.* ¶ 39. In May 2023, Davis's mother learned that Pointer may be having an inappropriate relationship with her son, reported her concerns to the school and the Joliet Police Department, and continued following up, but nothing was done. *Id.* ¶ 41.

During all relevant times, the Board had in effect multiple policies which prohibited all forms of child sexual abuse, and an employee code of conduct that required employees to maintain professional and appropriate relationships with students. *Id.* ¶¶ 46–51. These policies also required school staff to be trained in the code of conduct and appropriate employee-student boundaries. *Id.* ¶¶ 48–51. Pointer was trained as a JTHS employee. *Id.* ¶ 56. Despite these policies and warning signs, the Board did not investigate the matter or attempt to intervene to protect Davis. *See, e.g., id.* ¶¶ 57, 138.

Davis filed this suit on February 29, 2024. R. 1. His first amended complaint asserts the following claims against the Board: willful and wanton liability; intentional infliction of emotional distress ("IIED"); violations of his substantive due process and equal protection rights under 42 U.S.C. § 1983; violation of Section 504

4

of the Rehabilitation Act, 29 U.S.C. § 794(a); violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132; and violation of Title IX of the Education Amendments of 1972 ("Title IX"). Davis also seeks punitive damages against Pointer. The Board moves to dismiss for failure to state a claim and to find that punitive damages are not available against the Board.[1]

## Discussion

I. Section 1983 Claim

A government entity, such as the Board, can be liable under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).

To state a *Monell* claim, Davis must plead facts that plausibly suggest that (1) he was deprived of a constitutional right; (2) the deprivation can be traced to some municipal action (i.e., a policy or custom); (3) the policy or custom demonstrates municipal fault (i.e., deliberate indifference); and (4) the municipal action was the moving force behind the violation. *Thomas*, 74 F.4th at 524.

Municipal action supporting *Monell* liability can take the form of: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom

---

[1] All instances of punitive damages asserted in the complaint are directed at Pointer. Thus, the Court denies without prejudice the Board's request to find it is not liable for punitive damages. The Board may re-raise its argument if Davis ever seeks punitive damages against the Board.

or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Id.* (citation omitted). *Monell* liability can additionally arise from a policy of inaction. *J.K.J. v. Polk Cnty.*, 960 F.3d 367, 378 (7th Cir. 2020). However, this path is "steeper" and requires that the municipality had "notice that its program will cause constitutional violations." *Id.* at 379–80; *see also Connick v. Thompson*, 563 U.S. 51, 63, 70 (2011).

Although unclear from his response, Davis seems to premise his claim against the Board on the following municipal actions: (1) a widespread practice or custom of ignoring, excusing, and dismissing sexual misconduct by school staff; and (2) a failure to implement or train staff on Faith's Law,[2] act to protect Davis, and follow its own policies. Under either, however, Davis fails to state a claim.

As to the widespread practice or custom, Davis must allege facts to permit a reasonable inference that "the practice is widespread and that the specific violations complained of were not isolated incidents . . . so as to constitute a governmental custom." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017) (citations omitted). While Pointer's alleged conduct towards Davis is alarming, especially considering the length of time the alleged abuse occurred, the failure to discipline one teacher or investigate a single teacher for abusing a single student does not plausibly suggest a widespread practice or custom of ignoring teacher-on-student sexual

---

[2] Faith's Law is an Illinois law that requires school districts to develop a code of conduct that identifies appropriate employee-student relationships, train employees on that code of conduct, and discipline employees for violating the code of conduct. 105 ILCS 5/22-85.5.

harassment. *See, e.g.*, *J.R. v. Bd. of Educ. of the City of Chi.*, No 19 C 8145, 2023 WL 1928166, at *4 (N.D. Ill. Feb. 10, 2023) ("The[re] are no factual allegations to plausibly support the claim that [there] were other 'inadequate [background] checks' or that Legal Prep allowed any other employee to work with students without conducting adequate checks."); *Doe v. Grosch*, No. 17 C 1214, 2017 WL 3970515, at *3 (N.D. Ill. Sept. 8, 2017) (parents did not adequately plead a widespread practice when they pointed only to the bullying incidents involving their son); *Petropoulos v. City of Chicago*, 448 F. Supp. 3d 835, 841 (N.D. Ill. 2020) (dismissing *Monell* claim for failure to adequately plead a widespread practice or custom where plaintiff identified only their own personal experiences and alleged no other examples of the City releasing information to the wrong recipients); *Demos v. Schneider*, No. 23 CV 741, 2023 WL 7166730, at *4 (N.D. Ill. Oct. 27, 2023) (the incidents alleged "constituted a single deprivation of medication that Demos experienced" and were not part of a larger pattern); *cf. Black as next friend of J. D. v. Littlejohn*, No. 19 C 2585, 2020 WL 469303, at *6 (N.D. Ill. Jan. 28, 2020) (denying motion to dismiss *Monell* claim where plaintiff alleged three separate instances of harassment of different special education students by teachers and school staff).

As to municipal inaction, Plaintiff alleges in a conclusory fashion that the school staff was not trained on Faith's Law, yet alleges no facts to that effect. Nor does he allege facts causally connecting a failure to train on Faith's Law with his abuse. *See J.R.*, 2023 WL 1928166, at *4 (no factual allegations that the school failed to train its employees to evaluate background checks); *S.J. v. Perspectives Charter*

7

*Sch.*, 685 F. Supp. 2d 847, 857–58 (N.D. Ill. 2010) (dismissing failure-to-train *Monell* claim where plaintiff's strip search was the only alleged incident of misconduct and her conclusory allegations of failure to train did not plausibly suggest a failure to train); *cf. Medina as next friend for N.M. v. Izquierdo*, 594 F. Supp. 3d 1045, 1062–63 (N.D. Ill. 2022) (denying dismissal of failure-to-train *Monell* claim where several employees physically abused at least eight students and the school district's failure to adequately train its staff in how to defuse the situation when students became disruptive or when and how to use physical contact with students directly caused the constitutional deprivations); *Prince v. Garcia*, No. 22-CV-05703, 2024 WL 4368130, at *10 (N.D. Ill. Sept. 30, 2024) (dismissing failure-to-train *Monell* claim where plaintiff did not define what training the Village failed to provide or plead facts linking that failure to his injuries). Moreover, to the extent that the amended complaint alleges other purported failures or inactions by the Board, such allegations are boilerplate, and Davis offers no argument as to how he has adequately pleaded a *Monell* claim based on these types of alleged inactions.

Because Davis does not state a basis for *Monell* liability, the Court need not address the parties' constitutional arguments. The motion to dismiss the *Monell* claim is granted.

II. Title IX Claim

Title IX provides in pertinent part: "No person . . . shall, on the basis of sex, be excluded from participating in, be denied the benefits of, or be subject to discrimination under any education program or activity receiving Federal financial

8

assistance." 20 U.S.C. § 1681(a). Title IX's ban on "discrimination" prohibits a teacher or other school employee from sexually harassing or abusing a student. *See Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 75 (1992) ("[W]hen a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor 'discriminate[s]' on the basis of sex. . . . [T]he same rule should apply when a teacher sexually harasses and abuses a student." (cleaned up)).

But Title IX does not allow for vicarious liability. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 285 (1998). Students who are sexually harassed by school employees are only entitled to recover damages if an official who "has authority to address the alleged [harassment] and to institute corrective measures on the [school's] behalf has actual knowledge" of the sexual harassment and acted with "deliberate indifference" to the harassment. *Id.* at 290. Actual knowledge "arise[s] not only from what a school administrator sees with her own eyes, but also from information she learns from others." *C.S. v. Madison Metro. Sch. Dist.*, 34 F.4th 536, 544 (7th Cir. 2022) (en banc) (citation omitted). Willful blindness to objective facts may also support an inference of actual knowledge. *See id.* at 545. If the actual knowledge hurdle is cleared, the plaintiff must also adequately allege that (1) the educational institution received federal funding; (2) the harassment was based on sex; and (3) the harassment was so pervasive or severe that it altered the conditions of the plaintiff's education, or deprived the plaintiff of access to educational opportunities or benefits provided by the school. *Mary M. v. N. Lawrence Cmty. Sch. Corp.*, 131 F.3d 1220, 1228 (7th Cir. 1997).

9

The Board contends that Davis has not sufficiently alleged that any school official with authority to take corrective measures had actual knowledge of Pointer's misconduct. *See Doe A v. Plainfield Cmnty. Consol. Sch. Dist. 202*, 21 C 4460, 2022 WL 1641684, at * 4–5 (N.D. Ill. May 24, 2022) (dismissing Title IX claim for failure to allege actual knowledge where only the football coaches had suspicions of sexual assault, and no complaints had been made to school officials with authority to take corrective measures).

Here, Davis has plausibly alleged actual knowledge by the Board of the harassment. According to the amended complaint, school administrators received complaints from teachers about Davis frequently being called out of class to visit Pointer in her office and witnessed students tease Davis about his "affair" with Pointer and Davis and Pointer having "sex" in her office. School administrators saw Davis entering and exiting Pointer's office where the door was locked and the blinds were drawn. Davis's mother also reported the incident to the school. Davis claims that the administrators ignored the complaints and were indifferent to monitoring Pointer. The totality of these allegations permit the inference that school administrators had actual knowledge of the abuse. *See, e.g., Doe 20 v. Bd. of Educ. of Cmty. Unit Sch. Dist. No. 5*, 680 F. Supp. 2d 957, 971 (C.D. Ill. 2010) (factual allegations were sufficient to permit the reasonable inference of actual knowledge on the part of the school district).

The Board also argues that Davis does not adequately allege actual knowledge by school officials with the authority to institute corrective measures because he does

10

not identify the administrators who received the complaints, saw Davis visiting Pointer's office, or witnessed the teasing. At this stage, before discovery, Davis need not identify with particularity which administrators had notice. *Cf. Doe v. Bd. of Educ. of City of Chi.*, 611 F. Supp. 3d 516, 528 (N.D. Ill. 2020) ("[A]t the pleading stage a plaintiff need not necessarily specify the identity of the school official who had knowledge of the abuse."). Further, it is reasonable to infer that "school administrators" have the requisite authority to institute corrective measures.

The Board further argues that Davis does not adequately plead actual knowledge because he claims only that the Board "knew or should have known" about the alleged misconduct, which the Supreme Court has rejected as the standard for Title IX claims. Notwithstanding this phrasing, for the reasons explained above, the facts alleged in the amended complaint support actual knowledge. Additionally, the case cited by the Board addressed the proof of actual knowledge at the summary judgment stage, not the adequacy of the pleadings, and is thus unpersuasive. *Cf. Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 605–06 (7th Cir. 2008).

The Board also suggests that the facts alleged, specifically about school administrators observing Davis visiting Pointer's private office where the blinds were drawn and Davis's mother's complaint potentially being made after his graduation, do not plausibly suggest actual knowledge of the abuse while it was happening. This characterization of the facts is inconsistent with the requirement to draw all reasonable inferences in Davis's favor. And the facts alleged here allow for the reasonable inference that the school administrators' actual knowledge developed

11

while the misconduct was ongoing, which distinguishes this case from those cited by the Board. *C.f. Trentadue v. Redmon*, 619 F.3d 648, 653 (7th Cir. 2010) (on summary judgment, no actual knowledge where school officials found out about a student's sexual abuse after the fact); *Doe v. St. Francis Sch. Dist.*, 694 F.3d 869, 872–73 (7th Cir. 2012) (same). Thus, the motion to dismiss the Title IX claim is denied.

III.   ADA and Rehabilitation Act Claims

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participating in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act similarly prohibits disability discrimination in any federally funded "program or activity." 29 U.S.C. § 794(a). Because the relevant provisions of the two statutes are "materially identical,"[3] the same analysis applies to both claims. *See A.H. ex rel. Holzmueller v. Ill. High Sch. Ass'n*, 881 F.3d 587, 592 (7th Cir. 2018). To state a claim under the ADA and the Rehabilitation Act, Davis must allege that: (1) "he is a qualified individual with a disability"; (2) that he was "denied the benefits of the services, programs, or activities" by the Board; and (3) that the "denial or discrimination was by reason of his disability." *See Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (citation and internal quotation marks omitted).

---

[3] The only distinguishing factor is that claims under the Rehabilitation Act require that the defendant receive federal funds. *See Jaros v. Ill. Dep't of Corr.*, 684 F. 3d 667, 671 (7th Cir. 2012). Neither party contends that the Board does not receive federal funds.

12

Proceeding from the premise that Title IX's actual knowledge requirement also applies to these claims, the Board largely raises the same arguments for dismissal as it raised as to the Title IX claim. The Board additionally argues that Davis does not allege knowledge by the Board of any history of Pointer engaging in sexual misconduct towards other students. But the absence of any allegation that the Board had received complaints about Pointer abusing others before she abused Davis does not undercut the Board's actual notice about the abuse of Davis. Because, as previously discussed, Plaintiff adequately pleads actual knowledge, the motion to dismiss the ADA and Section 504 claims is denied.

IV. State Law Tort Claims[4]

The Board moves to dismiss the willful and wanton liability and IIED claims as inadequately pled and barred by various provisions of the Illinois Local Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity Act"), 745 ILCS 10/1-101 *et seq.* The Court addresses each argument in turn.

   A.   Willful and Wanton Liability

Under Illinois law, there exists no separate and independent tort for willful and wanton conduct. *Krywin v. Chi. Transit Auth.*, 938 N.E.2d 440, 452 (Ill. 2010). Rather, willful and wanton conduct constitutes an aggravated form of negligence. *Id.* Thus, a plaintiff must plead a negligence claim as well as "either a deliberate intention to harm or an utter indifference to or conscious disregard for the welfare of

---

[4] Because the Title IX, ADA, and Rehabilitation Act claims remains, the Court denies the Board's request to decline supplemental jurisdiction over the state-law claims.

13

the plaintiff." *Doe v. Chi. Bd. of Educ.*, 820 N.E.2d 418, 423 (Ill. 2004). "Circumstances indicating such a disregard for the safety of others include failure, after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness, or carelessness when it could have been discovered by ordinary care." *Doe v. Sch. Dist. U-46*, 557 F. Supp. 3d 860, 878 (N.D. Ill. 2021) (citation and internal quotation marks omitted).

The Board argues that Davis fails to adequately plead willful and wanton conduct because his allegations are conclusory and do not plausibly suggest that the Board had knowledge of the abuse. As discussed in detail in the preceding analysis, Davis plausibly alleges that the Board, at some point during the two years Davis was abused, was aware of the abuse, yet did nothing to look into the matter or stop it. These circumstances plausibly indicate a reckless disregard of the risk to Davis's safety. *See, e.g.*, *Doe v. Bd. of Educ. of City of Chi.*, 611 F. Supp. 3d at 544–45 (denying dismissal of willful and wanton claim where plaintiff had sufficiently alleged that the Board failed to prevent the improper touching of the student and knew its employees were not properly trained on reporting sexual misconduct); *Doe v. Sch. Dist. U-46*, 557 F. Supp. 3d at 878–79 (declining to dismiss willful and wanton claim where plaintiff alleged that school administrators were aware of bullying and harassment, but the school district allowed it to continue); *Wolfgram v. Miller*, No. 21-cv-02755, 2023 WL 6388729, at *12 (N.D. Ill. Sept. 30, 2023) (denying motion to dismiss willful and wanton claim where plaintiff alleged that the district knew about the teacher's

14

sexual misconduct with students but allowed the teacher to continue his employment and have isolated access to students).

And the Board's argument about a lack of prior knowledge of misconduct by Pointer is irrelevant as the amended complaint sufficiently alleges that the Board had actual knowledge of the abuse. Regardless, knowledge of prior sexual misconduct is unnecessary as recklessness may be sufficient to support allegations of willful and wanton conduct. *See Doe*, 611 F.Supp.3d at 544 (despite no facts suggesting the Board knew of prior sexual misconduct by the employee, "actual notice or knowledge is not required; recklessness is enough."); *Barr v. Cunningham*, 89 N.E.3d 315, 320 (Ill. 2017) (articulating the standard for willful and wanton conduct as a "conscious choice of a course of action, either with knowledge of the serious danger to others involved in it *or with knowledge of facts which would disclose this danger to any reasonable man*") (emphasis added).

The Board also argues that, to the extent the amended complaint alleges that the Board did not follow its own rules against and preventing child sexual abuse, such violations of its internal rules cannot itself constitute willful and wanton conduct. *See Floyd ex rel. Floyd v. Rockford Park Dist.*, 823 N.E.2d 1004, 1011 (Ill. App. Ct. 2005) ("[A] public entity's violation of its own internal rules does not constitute proof of negligence, much less willful and wanton conduct."). But Davis's amended complaint goes beyond alleging that the Board may have violated its own policies. It alleges that the Board failed to act in the face of clear indications over the course of two years that Davis was being abused by Pointer on school property.

15

B.     IIED

To state a claim for IIED, Davis must plead that the Board: (1) engaged in extreme and outrageous conduct; (2) either intended to inflict severe emotional distress or knew that there was a high probability that their conduct would do so; and (3) actually caused severe emotional distress. *Lifton v. Bd. of Educ. of City of Chi.*, 416 F.3d 571, 579 (7th Cir. 2005) (citation omitted). "To qualify, a defendant's conduct must be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized society." *A.S. as parent and next friend of F.S. v. Bd. of Educ. of Des Plaines Sch. Dist. #62*, No. 22 C 4745, 2024 WL 168102, at *3 (N.D. Ill. Jan. 16, 2024) (citation and internal quotation marks omitted). Courts also consider "the defendant's awareness that the plaintiff is particularly susceptible to emotional distress, because of some physical or mental condition or peculiarity." *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (Ill. 1992).

The Board contends that this claim should be dismissed because Davis alleges no extreme or outrageous conduct by the Board. The Board also, again, emphasizes that Pointer is not alleged to have engaged, or ever been accused of engaging, in such conduct in the past, or that any other student had complained about similar misconduct. Yet Davis alleges that JTHS assigned him to work with Pointer in light of his substance use issues and learning challenges. Davis claims he was sexually groomed and abused daily by Pointer for two years during school hours and on school property and, as explained above, school administrators had notice of the abuse, yet the Board failed to investigate or take any action to protect Davis from further abuse.

16

That prior complaints against Pointer were never made is irrelevant. Taking these allegations as true, Davis pleads facts sufficient to plausibly allege that the Board's failure to act in the face of supposed misconduct over an extended period was extreme and outrageous. *See A.S.*, 2024 WL 168102, at *3 (denying dismissal of IIED claim where complaints had been made about students allegedly bullying and sexually assaulting plaintiff's son on numerous occasions between second and fifth grade).

    C.    Tort Immunity Act

The Board further argues that the state tort claims should be dismissed based on the statute of limitations and immunity under the Tort Immunity Act, which are affirmative defenses. A plaintiff is not expected to anticipate or plead around affirmative defenses. *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016). "[B]ecause affirmative defenses frequently turn on facts not before the court at the pleading stage, dismissal is appropriate only when the factual allegations in the complaint unambiguously establish all the elements of the defense." *Id.* (cleaned up). Put differently, a plaintiff "must affirmatively plead himself out of court." *Chi. Bldg. Design v. Mongolian House, Inc.*, 770 F.3d 610, 613 (7th Cir. 2014).

As to the statute of limitations, Section 8-101(a) of the Tort Immunity Act provides that "[n]o civil action . . . may be commenced in any court against a local entity . . . for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued." 745 ILCS 10/8-101(a). Generally, when a plaintiff is a minor, the statute of limitations does not begin to run

17

until he reaches the age of 18. 735 ILCS 5/13-211. Thus, in the Board's view, that means Davis was required to file suit by February 10, 2024, the day he turned 19.

"Dismissal on statute of limitations grounds is proper on a motion to dismiss only when a plaintiff's allegations clearly establish that the claims are untimely." *Cielak v. Nicolet Union High Sch. Dist.*, 112 F.4th 472, 477 (7th Cir. 2024) (citation omitted). As alleged, Pointer began her misconduct with Davis during his sophomore year, while he was still a minor, and continued until at least May 20, 2023. R. 32 ¶¶ 10, 24, 28. In other words, even though the injury began while Davis was a minor, it continued until May 20, 2023 when he was 18. Davis filed his suit within one year of May 20, 2023. His allegations do not clearly establish that his claims are untimely.

The Board alternatively argues, citing no authority in support, that only the claims arising from conduct occurring after Davis turned 18 are actionable. But such a parsimonious approach is inappropriate and unnecessary. The state tort claims arise out of Pointer's sustained, continuous conduct over years, not a series of unrelated events taking place months or years apart. These allegations establish that these events are part of a continuing violation, and the state tort claims are not untimely. *See Feltmeier v. Feltmeier*, 798 N.E.2d 75, 85–86 (Ill. 2003) ("[U]nder the continuing tort or continuing violation rule, where a tort involves a continuing or repeated injury, the limitations period does not begin to run until the date of the last injury or the date the tortious acts cease.") (citations and internal quotation marks omitted).

As to immunity, Section 3-108 of the Tort Immunity Act provides that "neither a local public entity nor a public employee who undertakes to supervise an activity on or the use of any public property is liable for an injury unless the local public entity or public employee is guilty of willful and wanton conduct in its supervision proximately causing such injury." 745 ILCS 10/3-108(a). Because Davis plausibly alleges willful and wanton conduct by the Board, the amended complaint does not conclusively establish that immunity applies. Therefore, dismissal based on the statute of limitations and immunity provisions is inappropriate at this juncture. The motion to dismiss the state law tort claims is denied.

## Conclusion

For the foregoing reasons, the Board's motion to dismiss is granted in part and denied in part. The § 1983 claim against the Board is dismissed without prejudice. Davis may file a second amended complaint by December 17, 2025 if he intends to replead that claim.

ENTERED:

*Thomas M Durkin*

———————————————
Honorable Thomas M. Durkin
United States District Judge

Dated: November 24, 2025